NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| Raymond ROSADO, JR., | : | |
| | : | |
| Plaintiff, | : | Civil No. 18-13430 (RBK/AMD) |
| v. | : | |
| | : | **OPINION** |
| TAM LENDING CENTER, INC. d/b/a | : | |
| TODAY'S AMERICAN MORTGAGE, and | : | |
| PHILIP VALIANTI, | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter is before the Court on the motion of Defendants TAM Lending Center ("TAM") and Philip Valianti to strike Plaintiff's jury demand and to transfer venue to the Western District of North Carolina under 28 U.S.C. § 1404(a). (Doc. No. 4.) Because the Court **GRANTS** Defendants' motion to transfer, it does not reach the jury demand issue, which the transferee court should decide.

## I.    BACKGROUND

TAM's former employee, Plaintiff Raymond Rosado, filed this whistleblower action alleging that Defendants violated the New Jersey Conscientious Employee Protection Act ("CEPA") by terminating him after he reported illegal activity to his supervisors. (Doc. No. 1 ("Compl.") at ¶¶ 30–40.) Plaintiff is a citizen of Pennsylvania; TAM is a lending company incorporated and with its principal place of business in New Jersey; Valianti, TAM's Senior Vice President, is a citizen of New Jersey. (*Id.* at ¶¶ 3–5, 12.)

TAM hired Plaintiff around February 2017 as a mortgage loan officer. (*Id.* at ¶ 14.) For most of his employment, Plaintiff worked in TAM's New Jersey location. (*Id.* at ¶ 15.) When Defendants hired Plaintiff, they placed him on a team with branch manager Douglas Webb, who worked in Pennsylvania, even though Plaintiff worked in New Jersey. (*Id.* at ¶ 17.)

Plaintiff signed an employment contract with Defendants. (Doc. No. 4-3, Ex. A ("Agreement").) The Agreement contains several relevant provisions, including a governing law clause (*id.* at § 7.8), a jury waiver clause (*id.* at § 7.10), a class action waiver clause (*id.* at § 7.11), and most importantly, a forum selection clause (*id.* at § 7.9). Although the clauses are addressed more fully below, the forum selection clause reads, in full:

> Employee agrees that any litigation concerning this Agreement, the activities contemplated hereby, and any aspect of the employment relationship between Employer and Employee shall be brought in the state or federal courts in or for Mecklenburg County, North Carolina, in any action or proceeding between the Parties and both of the Parties agree to service of process by hand delivery, recognized overnight courier or by certified mail to the addresses set forth for each party.

(*Id.*) According to Valianti, the parties chose North Carolina as the forum for covered actions because TAM has rented space there since January 2016 and Defendants hired Plaintiff alongside Webb, who originally wanted to work out of TAM's North Carolina branch. (Doc. No. 4-3, Ex. B, ("Valianti Cert.") at ¶¶ 4–7.)

Plaintiff alleges that Defendants terminated him in February 2018 because while working for TAM, he learned of and complained to multiple levels of management about TAM's use of unlawfully obtained customer data. (Compl. at ¶¶ 33, 36–40.) Specifically, Plaintiff alleges that through his own research, observations, directives he received, and interactions with coworkers and management, he realized that Defendants used unlawfully obtained proprietary and confidential data of other businesses to contact customers. (Compl. at ¶¶ 35–36.) Plaintiff also

alleges that after he complained, TAM transferred him to Pennsylvania, where TAM forced him to illegally work in an unlicensed office despite objection. (*Id.* at ¶¶ 23–32, 36.)

After his termination, Plaintiff brought this case, invoking this Court's diversity jurisdiction. (*Id.* at ¶ 2.) The Complaint contains a single claim under CEPA for wrongful termination retaliation against Defendants. (*Id.* at ¶¶ 41–43.) Pointing to the Agreement's jury waiver and forum selection clauses, Defendants now move to: (1) transfer this action to the Western District of North Carolina, and (2) strike the Complaint's jury demand. (Doc. No. 4.) Because the Court grants Defendant's first request, it need not reach the second.

## II. DISCUSSION

Plaintiff opposes transfer for three unavailing reasons. First, Plaintiff claims that the forum selection clause does not apply to his claim under the CEPA statute because the clause applies only to contract-based claims. (Doc. No. 5 ("Pl.'s Br.") at 11–15.) Second, Plaintiff claims that the clause is unenforceable. (*Id.* at 15–18.) Third, Plaintiff claims that transfer is not supported under 28 U.S.C. § 1404(a). (*Id.* at 18–20.) The Court addresses each argument in turn.

### A. Scope of Forum Selection Clause

"A scope-based challenge to the applicability of a forum-selection clause presents a quintessential question of contract interpretation." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98 (3d Cir. 2018). Contract construction is usually a matter of state law, and federal courts sitting in diversity analyze the forum state's choice of law rules to determine which state's law applies to construe the contract provision. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182–83 (3d Cir. 2017). Under New Jersey's choice of law rules, courts ordinarily uphold the parties' contractual choice to be governed by the laws of a particular state unless: (1)

the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or (2) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties. *Id.* at 183–84.

Here, the Agreement contains a "governing law" clause, which states that the "Agreement and any disputes arising out of or relating to its terms shall be governed" under North Carolina law. (Agreement at § 7.8.) Yet neither party performs a choice of law analysis. Nor do they dispute which state's law applies to determine the forum selection clause's scope. Instead, they both cite and make arguments under New Jersey law. Like both parties, the Court will apply New Jersey law to construe the forum selection clause. But the Court finds—and assumes that both parties believe—that there is no material difference between New Jersey and North Carolina law on how the clause's language should be interpreted.

Under New Jersey law, if contractual language is "unambiguous," the parties' intent is "gleaned from the specific language of the agreement." *Zurbrugg Mem'l Hosp. v. Conrad Brahin, P.A.*, No. 87-cv-2717, 1988 WL 98536, at *2 (D.N.J. Sept. 23, 1988). The "intent as expressed or apparent in the writing . . . controls," *J.I. Hass Co. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989), and words are "given their plain and ordinary meaning." *Rizzo v. Island Med. Mgmt. Holdings, LLC*, No. A-0554-17T2, 2018 WL 2372372, at *4 (N.J. Super. Ct. App. Div. May 25, 2018) (citation omitted). "Where the contract is clear and unambiguous, the determination of the parties' intent is purely a question of law within the exclusive province of the trial court." *Mt. Hawley Ins. Co. v. Swift Constr., LLC*, No. 15-cv-2187, 2018 WL 1542153,

at *5 (D.N.J. Mar. 29, 2018) (citation omitted); *accord Jeffries v. Jeffries*, 578 S.E.2d 709 (N.C. Ct. App. 2003) (describing same approach under North Carolina law).

Here, the forum selection clause reads, in pertinent part:

> Employee agrees that any litigation concerning this Agreement, the activities contemplated hereby, and any aspect of the employment relationship between Employer and Employee shall be brought in the state or federal courts in or for Mecklenburg, County, North Carolina, in any action or proceeding between the Parties[.]

(Agreement at § 7.9.)   Thus, the clause applies to three types of matters—any litigation concerning: (1) the Agreement, (2) the activities contemplated hereby, and (3) any aspect of the parties' employment relationship.

The Court takes up the third category here, which unambiguously covers Plaintiff's CEPA claim.  The phrase "any litigation" sweeps broadly, making no distinction about the type of claim a party must bring for the to clause apply.  The word "concerning" is also very broad, defined as "relating to, regarding, respecting, about."  *See Bleumer v. Parkway Ins. Co.*, 649 A.2d 913, 926 (N.J. Super. Ct. Law. Div. 1994) (citing Webster's Dictionary in analyzing whether arbitration clause covered CEPA claim); *accord Justice for Animals, Inc. v. Robeson Cty.*, 595 S.E.2d 773, 777 (N.C. Ct. App. 2004) (citing Webster's Dictionary for same definition).  The phrase "relating to"—with which the word "concerning" equates—is defined as having a "logical or causal connection between."  *Isaacson v. Pub. Emp't Relations Comm'n*, No. A-2991-14T4, 2017 WL 745766, at *5 (N.J. Super. Ct. App. Div. Feb. 27, 2017); *accord Schwarz v. St. Jude Med., Inc.*, 802 S.E.2d 783, 788 (N.C. Ct. App. 2017) (analyzing Minnesota law, but citing Webster's Dictionary for the plain meaning of phrase "relating to"); *see also News & Observer Pub. Co. v. Easley*, 641 S.E.2d 698, 704 (N.C. Ct. App. 2007) (similarly defining the phrase "relating to").

Here, Plaintiff's CEPA claim, which fits within the clause's use of "any litigation," has a logical or causal connection to an "aspect" of the parties' "employment relationship" because Plaintiff alleges that Defendants terminated and retaliated against him for complaining to "different levels of management" about illegal conduct that he observed "[w]hile working for Defendants." (Pl.'s Br. at 9–11.) In fact, Plaintiff's CEPA claim arises only *because of* his employment relationship with Defendant. *See Young v. Twp. of Irvington*, No. 11-cv-06855, 2013 WL 5730399, at *2 n.3 (D.N.J. Oct. 21, 2013) (rejecting CEPA claim absent "employment relationship" between parties, as CEPA "covers action taken only with respect to [an] employment relationship established between [an] employer and employee"). Indeed, another federal court has recently interpreted the virtually identical language "any litigation involving . . . the employment relationship" in a forum selection clause and agreed that it "clear[ly] and unambiguous[ly]" encompassed a statutory retaliation claim like Plaintiff's CEPA claim. *See Fagbeyiro v. Schmitt-Sussman Enters., Inc.*, No. 17-cv-7056, 2018 WL 4681611, at *3 (S.D.N.Y. Sept. 28, 2018) (explaining that the plaintiff could only "advance [discrimination and retaliation] claims because they involve his employment relationship with his employer").

Plaintiff's contrary arguments fall flat. Perhaps recognizing the broad scope of the forum selection clause's third portion, Plaintiff misrepresents its reach by attempting to rewrite it with added bracketed language that does not actually exist in the clause. As Plaintiff redrafts it, the clause's third portion would apply only to "'any aspect of the employment relationship between Employer and Employee,' [as outlined in the agreement.]" (Pl.'s Br. at 13.) Of course, the bracketed limitation in Plaintiff's remaking cannot change what is written. *See E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc.*, 838 A.2d 494, 497 (N.J. Super. Ct. App. Div. 2004) ("A court has no power to rewrite the contract of the parties by substituting a new or different

provision from what is clearly expressed in the instrument."); *Barker v. Barker*, 745 S.E.2d 910, 913 (N.C. Ct. App. 2013) ("Where a contract's language is clear and unambiguous, a court must interpret it as it is written and may not reject its terms or insert what was omitted.").

Next, Plaintiff incorrectly suggests that the Court should read in the bracketed limitation to restrict the forum selection clause to disputes about the Agreement itself because, in Plaintiff's view, the "governing law" clause is so limited and contracts are read as a whole. (Pl.'s Br. at 14.)

But looking to related clauses only highlights why the forum selection and governing law clauses should be read distinctly. As noted above, the governing law provision, which immediately precedes the forum selection clause, reads: "*This Agreement* and any disputes *arising out of or related to its terms* shall be governed and enforced" under North Carolina law. (Agreement at § 7.8. (emphasis added).) The jury waiver clause, by contrast, which immediately follows the forum selection clause, shares similar language to the forum selection clause. Unlike the governing law clause, the jury waiver clause applies to any litigation in any way associated with the "Agreement, the activities contemplated hereby, *the relationship of the parties hereto as employer and employee*, or the actions of the parties hereto in connection with any of the foregoing." (Agreement at § 7.10 (emphasis added).) The very next term—a class action waiver—similarly applies to any class action "relating in any way to the *Employee's employment*." (*Id.* at § 7.11 (emphasis added).) Thus, the parties clearly used varying language between the governing law clause and these other related terms, so the Court declines to impute the governing law clause's alleged limitations on the distinctly drafted and unambiguous forum selection clause.

Finally, Plaintiff relies on two inapposite cases in claiming that the forum selection clause does not cover his CEPA claim. *See Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850, 851 (3d Cir. 2009); *Kanafani v. Lucent Techs. Inc.*, No. 07-cv-11, 2009 WL 3055363, at *8 (D.N.J. Sept. 18, 2009).

But in *Nuzzi*, the Third Circuit confronted an entirely different issue—whether a party should be deemed to have *waived the right to bring* statutory claims or to be heard in a *judicial forum* under an *arbitration* provision. *See Nuzzi*, 341 F. App'x at 851 (interpreting clause in employment agreement stating that "any claims or disputes arising out of, or related to this Agreement will be determined by binding arbitration" in California and under California law). As New Jersey courts have made clear, "arbitration involves a waiver of the right to pursue a case in a judicial forum, [so] courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." *Flanzman v. Jenny Craig, Inc.*, 196 A.3d 996, 1001 (N.J. Super. Ct. App. Div. 2018); *see also Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 670 (N.J. 2001) (explaining that a clause "depriving a citizen of access to the courts should clearly state its purpose") (citations omitted). For a contract to waive a party's statutory rights, the waiver must similarly be "clearly and unmistakably established." *Id.*

Accordingly, the *Nuzzi* panel declined to apply the arbitration clause's California choice of law portion because applying it would have effectively prevented the plaintiff from bringing her New Jersey law claims. Under *Garfinkel*, the panel reasoned, New Jersey courts require a waiver of statutory rights to be "unambiguous[]." *Nuzzi*, 341 F. App'x at 853. But "[s]uch a waiver did not occur" in the narrowly worded provision. *Id.* The panel declined to apply the

arbitration clause's choice of forum portion "for the same reason," as the plaintiff did not unambiguously waive the right to appear in a judicial forum. *Id.*

Here, by contrast, Plaintiff does not claim that he will be forced to waive his right to be heard in a judicial forum or his right to bring his CEPA claim if the forum selection clause is enforced. Plaintiff simply dislikes the prospect of litigating in a *different* judicial forum, where he may vindicate those rights. In fact, Defendant does not contend, nor does Plaintiff, that the separate governing law clause—which calls for the application of North Carolina law to disputes "arising out of or relating to" the Agreement's "terms"—waives Plaintiff's ability to bring his New Jersey law claim. To the contrary, Defendant states that there will be "no issue" with litigating the "merits of Plaintiff's CEPA claim" in North Carolina or applying New Jersey law to it. (Doc. No. 8 ("Def.'s Rep. Br.") at 13.)

Plaintiff's reliance on *Kanafani* is misplaced for similar reasons. 2009 WL 3055363, at *8. In *Kanafani*, the district court held that a forum selection clause worded like the one here did not encompass the plaintiff's CEPA claim. *Id.* at *7–8 (interpreting clause providing that "[a]ll disputes between the parties arising out of the employment relations or connected therewith, will be settled by the UAE courts of law and according to the UAE law"). But in so holding, the district court relied entirely on *Nuzzi* and *Garfinkel* without recognizing the limited issue they addressed. In fact, another court has distinguished *Kanafani* on this basis, finding instead that the plaintiff's CEPA claim fell within the scope of a forum selection clause that, like here, applied to "any dispute . . . concerning Employee's employment." *See May v. Athena Health, Inc.*, No. 155379-2017, 2018 WL 3601395, at *4 (N.Y. Sup. Ct., N.Y. County, July 27, 2018) (distinguishing *Kanafani* because "there is no colorable argument that by agreeing to the forum selection provision, plaintiff waived her right to bring CEPA claims" as the provision merely

"limit[ed] and clarifie[d] the forum" in which they could be brought). Thus, Plaintiff's arguments do not change the conclusion that the forum selection clause applies to his CEPA claim.

**B.  Enforceability of Forum Selection Clause**

Next, Plaintiff claims that forum selection clause is not enforceable.  (Pl.'s Br. at 15–18.) Federal law determines whether a forum selection clause is enforceable.  *See Register v. GNC Holdings, Inc.*, No. 17-cv-1320, 2017 WL 4675386, at *1 (D.N.J. Oct. 17, 2017). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (quotations omitted).  A forum selection clause is generally valid unless: (1) it is the result of fraud or overreach; (2) enforcement would violate strong public policy of the forum; or (3) enforcement would, under the circumstances, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.  *See Register*, 2017 WL 4675386, at *1 (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)).

Here, Plaintiff argues that enforcing the forum selection clause violates strong New Jersey policy and that litigating in North Carolina is so seriously inconvenient as to be unreasonable.  (Pl.'s Br. at 15–17.)  Yet Plaintiff meets his burden on neither score.

Plaintiff has not shown that a North Carolina litigation is unreasonably inconvenient because although he claims that the events and parties have little North Carolina connection, those contentions do not suggest that litigating there "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  *Collins*, 874 F.3d at 181.  Nor can Plaintiff meet his burden to rebut the clause's presumptive validity by

arguing, as he has, about what *Defendants failed to do*, like citing factually similar cases. (Pl.'s Br. at 16–17.) The burden is Plaintiff's alone.

Plaintiff also fails to meet his burden to show that enforcing the forum selection clause violates strong New Jersey policy.[1] Plaintiff identifies no specific New Jersey policy that should override the parties' forum selection clause. Instead, Plaintiff makes generic observations, not arguments—Plaintiff vaguely writes, for example, that "in the absence of a contract, an employee may be fired for any reason, be it good cause, no cause, or even morally-wrong cause, but not when the discharge is contrary to a clear mandate of public policy." (Pl.'s Br. at 17.) From there, Plaintiff cites a string of general authority, including the CEPA statute, still without making a clear argument about the policy implicated, much less why enforcement violates it. (*Id.*) Plaintiff then concludes by discussing three cases that do not apply,[2] again without explaining their supposed import here.

---

[1] In claiming that enforcing the forum selection clause violates strong New Jersey policy, Plaintiff also suggests, in passing, that the same is true of enforcing the Agreement's governing law provision. (Pl.'s Br. at 17.) But the precise basis of Plaintiff's undeveloped argument is unclear and not sufficient to meet his burden. (*Id.*) Plaintiff may intend to suggest that enforcing the governing law clause is against New Jersey policy because applying North Carolina law under it would effectively require him to waive his right to bring his CEPA claim. But as noted above, Defendants makes no such claim and concede the opposite. (Def.'s Rep. Br. at 13.)

[2] *See Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 626–28 (N.J. 1996) (holding that forum selection clauses in contracts subject to the Franchise Act are preemptively invalid); *Param Petroleum Corp. v. Commerce & Indus. Ins. Co.*, 686 A.2d 377, 378 (N.J. Super. Ct. App. Div. 1997) (extending *Kubis* to decline enforcement of a forum selection clause in an insurance policy respecting property located wholly within New Jersey, but requiring litigation elsewhere, because "the argument for the presumptive rejection of forum-selection clauses is even stronger in relation to insurance policies than it is for franchise agreements"); *see also D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 307 (N.J. 1993) ("We hold that because the underlying controversy 1) involves an alleged violation in New Jersey of the Foreign Corrupt Practices Act . . . which sets forth a domestic policy against bribery of a foreign regulatory official; 2) involves the participation of a United States citizen who might have been exposed to criminal prosecution had the conduct violated the FCPA and was an alleged violation of a New Jersey corporation's internal policy against such overseas commercial bribery; and 3) because

### C. Transfer Under 28 U.S.C. § 1404(a)

Because Plaintiff does not rebut the forum selection clause's presumptive validity, the Court turns to Plaintiff's final claim: that the Court should not transfer the action under 28 U.S.C. § 1404(a). (Pl.'s Br. at 18–20.) Ordinarily, courts assessing a venue transfer weigh a range of public and private interest factors. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). The private interest factors include:

> [p]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). The public factors, include:

> [t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

But when, as here, parties agree to a valid forum selection clause, a court alters its analysis by giving the plaintiff's choice of forum no weight and considering only the public interest factors, which should "rarely defeat a transfer motion." *Atl. Marine Const. Co.*, 571 U.S. at 63–65. The party acting in violation of the clause "must bear the burden" of showing that the public interest factors "overwhelmingly disfavor a transfer." *Id.* at 63–64, 67. As the Third

---

violation of the governmental policies could have an indirect effect on the domestic market for pharmaceutical products and the health and welfare of this forum's citizens, New Jersey's interests in resolving this dispute under its laws outweigh the Swiss interest in the at-will employment relationship that would not seek to deter such conduct through its civil law.").

Circuit has held, a party cannot meet this "heavy burden" when the party has "not disputed the availability of another forum" or "addressed with any specificity the public interest factors." *Collins*, 874 F.3d at 186–87.

Plaintiff does not carry his heavy burden, for his transfer analysis is limited entirely to private interest arguments that the Court cannot consider regarding the alleged location of witnesses and the convenience of the parties. (Pl.'s Br. at 19–20.) Even giving Plaintiff the benefit of arguments in other sections of his brief about where the events occurred and the parties' relationship to New Jersey, Plaintiff has still not met his burden. (Pl.'s Br. at 15–16.) Although those arguments could be relevant to the local interest in deciding the matter at home, Plaintiff still makes no showing as to the other five public interest factors. The Court also notes that Plaintiff is not a citizen of New Jersey, which generally upholds forum selection clauses. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 568 (D.N.J. 2000). Nor has Plaintiff cited any authority to suggest that New Jersey's general interest in deciding CEPA matters is so strong that it prevents other courts from hearing them, as they routinely do.[3]

Thus, and in view of the Supreme Court's instruction that the public interest factors should rarely defeat a transfer motion, the Court finds transfer appropriate.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is **GRANTED**. The Court expresses no opinion on whether Plaintiff waived his right to a jury trial under the Agreement. The transferee court should decide that issue, as the parties agreed to litigate there. *See Gianakis*

---

[3] *See, e.g.*, *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1071 (N.D. Ill. 2018) (analyzing CEPA claim on motion to dismiss); *Sell It Soc., LLC v. Strauss*, No. 15-cv-970, 2018 WL 2357261, at *13 (S.D.N.Y. Mar. 8, 2018) (analyzing CEPA claim on summary judgment); *Kerrigan v. Otsuka Am. Pharm., Inc.*, No. 12-cv-4346, 2016 WL 3597609, at *4 (E.D. Pa. July 5, 2016) (same).

*v. Hilton Tucson El Conquistador Golf & Tennis Resort*, No. 12-cv-4268, 2012 WL 5250463, at

*4 (D.N.J. Oct. 22, 2012) (declining to decide any other issues presented in party's motion in

favor of transferee court).  An Order shall issue.


Dated: 3/21/2019                              /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge